FILED
KC

MAR 17 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Cause No:_____

HOWARD LEVENTHAL,  )    In a petition for removal from the Circuit
        Petitioner (Respondent below),  )    Court of Lake County, IL
        )
v.        )
        )
MARY HANDELAND,  )    State court cause nos.:**05 D 808** and
        Respondent (Petitioner below),  )                **08 OP 334**
        )
and, in re: the support and welfare  )    **08CV1547**
of AMELIA WENYING HANDELAND-  )    **JUDGE LINDBERG**
LEVENTHAL, minor child of the parties.  )    **MAGISTRATE JUDGE KEYS**

## Notice of Petition and Verified Petition For Warrant Of Removal

**Comes now the Petitioner**, Howard Leventhal, and in direct support of this request for removal of the above-encaptioned state court cause into, and through, the various jurisdiction of this United States District Court provided under at least 28 USC § 1331, 28 USC § 1367, 28 USC 1441(b), 28 USC § 1441(c), 28 USC § 1441(e), 28 USC § 1443(1), 28 USC § 1443(2), and/or 28 USC § 1446, and on the federal questions involved, herein alleges, states, and provides the following:

### JURISDICTION

1. This District Court of the United States has original, concurrent, and supplementary jurisdiction over this cause of action, pursuant to the authorities cited above, including, but not limited to the following, to-wit: 28 USC § 1331, 28 USC § 1367, 28 USC 1441(b), 28 USC § 1441(c), 28 USC § 1441(e), 28 USC § 1443(1), 28 USC § 1443(2), and/or 28 USC § 1446.

2. The District Court of the United States is an Article III court with authority to hear questions arising under the Constitution, Laws, and Treaties of the United States, including but not limited to the Bill of Rights, the Ninth Amendment, the Eleventh Amendment, the original Thirteenth Amendment, the Fourteenth Amendment, the International Covenant on Civil and Political Rights, and the Universal Declaration of Human Rights, with Reservations. *See* the Article VI Supremacy Clause of the Constitution of the United States of America, as lawfully amended (*hereinafter* "U.S. Constitution").

## RESERVATION OF RIGHTS DUE TO FRAUD

3. Petitioner hereby explicitly reserves his fundamental Right to amend this and all subsequent pleadings, should future events and/or discoveries prove that he has failed adequately to comprehend the full extent of the damage(s) which he has suffered at the hands of the Respondent, the state court, and other involved parties, both named and unnamed, now and at all times in the future. *See* Rules 8, 15, and 18 of the Federal Rules of Civil Procedure.

## RECORD OF STATE PROCEEDINGS

4. Petitioner is now proceeding on the basis of the presumption that the Lake County Illinois Circuit Court court record will be made available to this Honorable Court upon Notice and Demand for Mandatory Judicial Notice, pursuant to Rules 201 and 902 of the Federal Rules of Evidence, the Full Faith and Credit Clause contained under Article IV of the U.S. Constitution, and 28 U.S.C. § 1449.

## INCORPORATION OF PRIOR PLEADINGS

5. Petitioner hereby incorporates by reference all pleadings, papers, and effects heretofore filed or otherwise lodged within the state proceedings the same as if fully set forth herein. (H.I).

## ALLEGATIONS

6.  Petitioner specifically complains on matters which go to related federal questions, such as federal criminal jurisdiction within the several States of the Union, and the denial or the inability to enforce, in the courts of a State, one or more rights under any law providing for the equal rights of citizens of the United States, or of all persons within the jurisdiction thereof, to-wit:

7.  Petitioner complains of various systematic and premeditated deprivations of fundamental Rights guaranteed by the U.S. Constitution, by the Constitution of the State of Illinois, as lawfully amended (*hereinafter* "Illinois Constitution"), and by federal law, and which deprivations are criminal violations of 18 U.S.C. §§ 241 and 242. *See also* 28 U.S.C. § 1652.

8.  On March 12, 2008 Judge Strickland in Case No. 05 D 808 (the original dissolution of marriage proceeding) ordered armed Lake County Sheriff's deputies wearing flak jackets and carrying Tazer weapons to surround Leventhal in the courtroom and served Leventhal with criminal charges, *for absolutely no reason other than that Leventhal had written the address* of Handeland's attorney David S. Kerpel in a draft legal pleading that was emailed to the attorney. By intentional and fraudulent misdirection perpetrated by Handeland's attorney, Judge Strickland thereby unconstitutionally suppressed Leventhal's constitutional right to petition the government under the First Amendment.

9.  On March 10, 2008, while Leventhal was present in the Lake County Courthouse and in violation of Leventhal's constitutional right to due process under the Fifth Amendment, Handeland and her attorney snuck out of Judge Strickland's courtroom where Leventhal was preoccupied and snuck into the *Domestic Violence* court of Judge Joseph Waldeck. Before Judge Waldeck, claiming that Leventhal would cause physical harm to Handeland *within the courthouse walls, during business hours, while the courthouse was fully populated with dozens*

*of armed, sworn peace officers* if Leventhal were given proper notice; Handeland and her attorney obtained an "Emergency Order of Protection", against Leventhal, under Lake County Case Number 08 OP 334 (hereinafter the "EOP"). The EOP and its underlying petition were and are fraudulent and perjurious in every conceivable way as it pertains to claims and insinuations of acts of civil and criminal damage by Leventhal and alleged against Leventhal. Among other things, the EOP alleges falsely:

a) *"Respondent (Leventhal) is prohibited from committing further acts of abuse",* when in fact no acts of abuse have ever occurred and there is no competent proof in the record to the contrary; and

b) *"That Respondent (Leventhal) is ordered to stay away from the Petitioner..."* implying that Respondent has ever even approached the Petitioner without invitation or notice or expectation or acted in any indecorous way – none of which has ever happened; and

c) That Respondent (Leventhal) has abused, harassed, intimidated, interfered with personal liberty, and willfully deprived Handeland and/or the parties' minor child Amelia when in fact no acts of such manners of abuse have ever occurred and there is no competent proof in the record to the contrary; and

d) That Respondent Leventhal has committed domestic violence when in fact no acts of domestic violence have ever occurred and there is no competent proof in the record to the contrary; and

e) That Respondent Leventhal has exploited Handeland and/or the parties' minor child when in fact no acts of exploitation have ever occurred and there is no competent proof in the record to the contrary; and

f) That Respondent has harassed Handeland and/or the parties' minor child when in fact no acts of harassment have ever occurred and there is no competent proof in the record to the contrary;

and

g) That Respondent Leventhal has neglected Handeland and/or the parties' minor child when in fact no acts of neglect have ever occurred and there is no competent proof in the record to the contrary; and

h) That Respondent Leventhal has stalked Handeland and/or the parties' minor child when in fact no acts of stalking have ever occurred and there is no competent proof in the record to the contrary; and

j) That Respondent Leventhal has concealed the parties' minor child or has planned or threatened concealment when in fact no such acts have ever occurred and there is no competent proof in the record to the contrary; and

k) That Respondent Leventhal would improperly dispose of some personal property if notice of the EOP hearing were given, when in fact no such act has ever occurred or been threatened and there is no competent proof in the record to the contrary.  The record does however contain a false claim that the automobile driven by Handeland is marital property or Handeland's property, when in fact the same automobile is the lien-encumbered property of the publicly-traded corporation which employs Leventhal; and further incredibly the EOP attempts to convert this automobile into the property of Handeland; and

m) That Respondent Leventhal's absolute, priorly unchallenged parental rights were extinguished and that Leventhal was ordered not to remove the parties' minor child Amelia from school grounds or any other place – when in fact Leventhal, while having no duty in this regard, has never appeared or threatened to appear even once at Amelia's school, has never entered the school grounds without first being invited by Handeland, has never telephoned Amelia's school without first consulting with Handeland and has never, prior to Handeland's petition for the

unconstitutionally secured EOP once been accused of any maltreatment whatsoever of Amelia. Quite to the contrary, Leventhal is praised and commended in the strongest possible terms for his parenting skills, care and concern as evidenced in the testimonial and affidavit copies, attached hereto with the letter of transmittal to the State Court as Exhibit 1; and

n) The only accurate and truthful factual statements in the EOP about Howard are Howard's name, address and description. Meaningfully everything else is an absolute, outright, unmitigated lie.

10. As a matter of habit and practice Handeland unrightfully and illegal interferes with the visitation rights afforded to Leventhal in the parties' Joint Parenting Agreement, without due process of law.

11. As a matter of habit and practice Handeland unrightfully and illegal interferes with Leventhal's strict parental rights, without due process of law.

12. As a matter of habit and practice Handeland (resident of the State of Illinois) and her mother Lorraine Marx, father Stephen Budiac, sister Christine Klotz, brother Michael Budiac (residents of the State of Wisconsin) and psychotherapist Deborah Gust (state of residence unknown) psychologically abuse Amelia so that Amelia has become so conditioned to disfavor Leventhal as a parent, that Amelia, a 7 year old girl, breaks down in tears for no reason frequently, merely because she is in the presence of Leventhal and his close family members. When queried for the reasons for this, Amelia who is of above average intelligence and well developed communications skills, cannot or will not explain her behavior.

13. Handeland has received monies well into 6 figures in the 26 months since Leventhal was forced to move out of the marital residence. Approximately 1/3 of the money she has received is over and above the basic combination of temporary maintenance and child support amount of

$5500.00 per month; and Handeland has steadfastly refused to account for this 1/3 extra "essential expense money" despite being asked for it a multitude of times – suggesting serious child support fraud on Handeland's part.

14. The Lake County Illinois state court has further unconstitutionally denied Leventhal's rights by refusing to make an order even requesting an accounting of the child support monies paid to Handeland by Leventhal, let alone place any limit on the demands placed upon Leventhal for such funds. Nonetheless Leventhal has faithfully paid 100% of the unlimited amounts demanded by Handeland for the entire 26 months since his departure from the marital residence, on time or within a few days of being on time.

15. The cumulative negative effects of the proceedings in Lake County Court on Leventhal have amounted to, among other things, an illegal eviction from the marital residence paid for entirely out of money earned by Leventhal and contributed-to in no way by Handeland and

16. Other manifest injustices rising to the level of federal issues have been perpetrated upon Leventhal by Handeland, her relatives and professional counsel across state lines between Illinois and Wisconsin, too numerous and detailed for the scope of this pleading.

17. Federal question as regarding awards of child support and commissions of fraud therein: The egregiously different burdens and benefits placed on persons similarly situated but for the award of custody, i.e., parents with the obligation to support their child and the same means for doing so as when they were married, has been explained at length in several judicial opinions. The finding is that such disparate treatment violates the guarantees of equal protection. *Jones v. Helms*, 452 U.S. 412, 101 S.Ct. 2434 (1981), *South Central Bell Telephone Co. v. Alabama*, 526 U.S. 160, 119 S.Ct. 1180 (1999), and *Romer v. Evans*, 517 U.S. 620, 116 S.Ct. 1620 (1996). Child support guidelines do not result in awards based on the constitutionally sound principles of

equal duty and proportional obligation (proportional to available financial resources such as each parent's income). See *Smith v. Smith*, 626 P 2d 342, 345-348 (Oregon, 1980); *Meltzer v. Witsberger*, 480 A.2d 991 (Pa. 1984); and *Conway v. Dana*, 318 A.2d 324 (Pa. 1985).

18. Further, the instant state proceedings have consistently demonstrated themselves to be willfully, intentionally, and knowingly in violation of both state and federal law, by: ordering unlimited awards of child support in favor of Handeland, that circumvented various statutory due process consideration factors as to needs, assets, debts, and resources of each parent, as well as violating due process procedures in the timeliness and payment logistics thereof; moreover, the actual amounts awarded, even *if* they had not been otherwise unlawful pursuant to the above, were consistently mandated and carried out in express violation of statutory maximum limits proscribed by both state and federal law. *See* 750 ILCS 5/510, 750 ILCS 5/505, 750 ILCS 5/513, 750 ILCS 5/402, 750 ILCS 5/502 as well as 15 USC § 1673, and 15 USC § 1675.

19. Federal question as regarding equal rights to care, custody, and control of minor children:

a)    A parent's right to raise a child is a constitutionally protected liberty interest. This is well-established constitutional law. The U.S. Supreme Court long ago noted that a parent's right to "the companionship, care, custody, and management of his or her children" is an interest "far more precious" than any property right. *May v. Anderson*, 345 U.S. 528, 533, 97 L. Ed. 1221, 73 S.Ct. 840, 843 (1952). In *Lassiter v. Department of Social Services*, 452 U.S. 18, 27, 68 L. Ed. 2d 640, 120 S.Ct. 2153, 2159-60 (1981), the Court stressed that the parent-child relationship "is an important interest that 'undeniably warrants deference and absent a powerful countervailing interest protection.'" quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 31 L. Ed 2d 551, 92 S.Ct. 1208 (1972).

b) A state's granting of primary custody to Handeland as has happened in the instant circumstances is sufficiently intrusive to warrant scrutiny, i.e., granting sole custody to one parent impinges on the rights of the other parent to a significant extent. This is obvious to the most casual observer. A parent whose time with a child has been limited to brief periods of visitation clearly has had his or her rights to raise that child severely restricted. Even in the process of drafting these pleadings, Leventhal has been forced to sit idly by and endure nothing but 2 sixty second phone calls per day with Amelia, while Handeland cares for Amelia during a bout with Scarlet Fever. The unequal opportunity unrightfully afforded to Handeland thereby to bond with Amelia and reinforce her relationship with Amelia while Leventhal is nothing but a disembodied electronic voice for 120 seconds per day, forced into a place with less emotional value to Amelia than a TV episode of *Sponge Bob* or *Hannah Montana*, is outrageous, offensive, undue and in violation of the 14th Amendment.

c) In *Troxel v. Granville*, 527 U.S. 1069 (1999), Justice O'Conner, speaking for the Court stated, "The Fourteenth Amendment provides that no State shall 'deprive any person of life, liberty, or property, without due process of the law.' We have long recognized that the Amendment's Due Process Clause, like its Fifth Amendment counterpart, 'guarantees more than fair process.' The Clause includes a substantive component that 'provides heightened protection against governmental interference with certain fundamental rights and liberty interest" and "the liberty interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interest recognized by this Court." Logically, these forms of fundamental violations are inherently a federal question.

d) The compelling state interest in the best interest of the child can be achieved by less restrictive means than primary custody. A quarter-century of research has demonstrated that

joint and **equal** physical custody is as good or better than sole custody in assuring the best interest of the child. As the Supreme Court found in *Reno v. Flores*, 507 U.S. 292, 301 (1993): "'The best interest of the child,' a venerable phrase familiar from divorce proceedings, is a proper and feasible criterion for making the decision as to which of two parents will be accorded custody. But it is not traditionally the sole criterion -- much less the sole constitutional criterion -- for other, less narrowly channeled judgments involving children, where their interest conflicts in varying degrees with the interest of others. Even if it were shown, for example, that a particular couple desirous of adopting a child would best provide for the child's welfare, the child would nonetheless not be removed from the custody of its parents so long as they were providing for the child adequately." Narrow tailoring is required when fundamental rights are involved. Thus, the state must show adverse impact upon the child before restricting a parent from the family dynamic or physical custody. It is apparent that the parent-child relationship of a married parent is protected by the equal protection and due process clauses of the Constitution. In 1978, the Supreme Court clearly indicated that only the relationships of those parents who from the time of conception of the child, never establish custody and who fail to support or visit their child(ren) are unprotected by the equal protection and due process clauses of the Constitution. *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978). Clearly, divorced parents enjoy the same rights and obligations to their children as if still married. The state through its family law courts, can impair a parent-child relationship through issuance of a limited visitation order, however, it must make a determination that it has a compelling interest in doing so. Trial courts must, as a matter of constitutional law, fashion orders which will maximize the time children spend with each parent unless the court determines that there are compelling justifications for not maximizing time with each parent.

Throughout this century, the Supreme Court also has held that the fundamental right to privacy protects citizens against unwarranted governmental intrusion into such intimate family matters as procreation, child-rearing, marriage, and contraceptive choice. *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 926-927 (1992).

e) Contrary to the state court's consistent disregard for the equal right of this (male) Petitioner to care, custody, control, and management of his minor child, and its corresponding continuum of sole and primary custody rulings in favor of (female) petitioners, the federal Due Process and Equal Protection rights extend to both parents equally. In *Caban v. Mohammed*, 441 U.S. 380, (1979) the Supreme Court found that a father who had for two years, but no longer, lived with his children and their mother was denied equal protection of the law under a New York statute which permitted the mother, but not the father, to veto an adoption. In *Lehr v. Robinson*, 463 U.S. 248 (1983), the Supreme Court held that "[w]hen an unwed father demonstrates a full commitment to the responsibilities of parenthood by 'com[ing] forward to participate in the rearing of his child,' *Caban*, [citations omitted], his interest in personal contact with his child acquires substantial protection under the Due Process Clause." (Id. at 261-262). To further underscore the need for courts to consider the constitutional protections which attach in family law matters, one need only look to recent civil rights decisions. In *Smith v. City of Fontana*, 818 f. 2d 1411 (9th Cir. 1987), the court of appeals held that in a civil rights action under 42 U.S.C. section 1983 where police had killed a detainee, the children had a cognizable liberty interest under the due process clause. The analysis of the court included a finding that "a parent has a constitutionally protected liberty interest in the companionship and society of his or her child." Id. at 1418, citing *Kelson v.*

*City of Springfield*, 767 F. 2d 651 (9th Cir. 1985). In *Smith* the court stated "We now hold that this constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents." Id. In essence, the Supreme Court has held that a fit parent may not be denied equal legal and physical custody of a minor child without a finding by clear and convincing evidence of parental unfitness and substantial harm to the child, when it ruled in *Santosky v. Kramer*, 455 U.S. 745, 753 (1982), that "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child is protected by the Fourteenth Amendment."

20. In the instant state proceedings, Leventhal has been continually deprived of the full right to equal care, custody, control, and management of the minor child, and the same approaching 5 years going, without any requisite showing of past or potential harm – of *any* kind – upon the minor child, while, instead and contrarily, Handeland has been consistently observed in acts of psychological abuse towards the child, long-ranging neglect of several important matters regarding the child, numerous acts of a dishonest and disingenuous nature– and, a general haphazard disdain for the minor child's emotional stability... yet, the state court essentially coddles her behavior *against* the best interests of the child, and *even* has gone to certain extraordinary lengths to shelter and assist some of these egregious manifestations.

21. This petition for removal is strictly *not* about a typical domestic relations action versus what would be the expected reluctance of a federal court to exercise jurisdiction over the same; this cause inures to the very *essence* of the enactment and purpose of 28 USC §§ 1441 and 1443: to provide for a federal remedy when a person "is denied or cannot enforce in the courts of such State a right under any law providing for the equal rights of citizens of the United States, or of all persons within the jurisdiction thereof"

NOTICE OF RELATED CASES

22. Petitioner also wishes respectfully to demand mandatory judicial notice, pursuant to Rule 201(d) of the Federal Rules of Evidence, and pursuant to the Full Faith and Credit Clause, of the following related cases supporting and documenting some of the above allegations, to wit:

23. Lake County Illinois Case Number 05 D 808, *Handeland (Petitioner) v. Leventhal (Respondent)* and Lake County Illinois Case Number 08 OP 334, *Handeland (Petitioner) v. Leventhal (Respondent)*.

24. There is a sufficient pattern of judicial abuse to substantiate that the jurisdiction of Judges Strickland and Waldeck over the instant state action was most likely *void ab initio*, and even if not, that any attempt at continuing exercise over the state proceedings *is* void.

25. Petitioner has a federal question right, under the guarantees of 42 USC § 2000a, to full and equal lawful treatment in a state court of law, and according to the various protections under not only the Indiana Constitution, but more importantly under those of the U.S. Constitution.

26. Petitioner has a federal question right, under the protections of the Civil Rights Act of 1964, 42 USC § 2000d, et seq., and as interpreted by the U.S. Supreme Court to *include* prohibitions against discrimination based on sex or gender, to now remove the instant state proceedings, under 28 USC §§ 1441 and 1443, in order to be free from the denial of such equal civil rights and treatment established by the above allegations. *See also* 42 USC § 2000d-7.

27. Petitioner has a federal question right, under the protections of 42 USC §§ 3617 and 3631, which include prohibitions against discrimination based on sex or gender, to remove the instant

state proceedings, under 28 USC §§ 1441 and 1443, in order to be free from the denial of such equal civil rights and treatment established by the above allegations. *See also* 42 USC § 2000d-7.

28. Petitioner has a further federal question right, under the protections of 42 USC § 5891, which include prohibitions against discrimination based on sex or gender regarding other matters and allegations expressed *supra*, to remove the instant state proceedings, under 28 USC §§ 1441 and 1443, in order to be free from the denial of such equal civil rights and treatment established by the above allegations. *See also* 42 USC §§ 5106a, 5106c, 10406, 10420, 10701, and etc.

29. Petitioner has a further federal question right not to be discriminated as articulated according to the above allegations, under the expressed public policy of the United States of America, by and through certain Acts of Congress strictly specifying the critical value of protecting children, youth, and family bonds, and the joint responsibilities of federal courts therein. *See* 42 USC §§ 12301, 12351, 12352, 12371, 12635, and etc.

30. Petitioner has a further federal question right to ensure that his minor child is free from experiencing abuse and/or neglect, due to unlawful sex or gender discrimination in awards of child custody, and to ensure that any involved state judicial systems meet or exceed their required corresponding duties under 42 USC §§ 13001, 13003, 13021, 13031, and etc.

31. Petitioner has a further federal question right, under 42 USC §14141, to be free from unlawful violations of civil rights committed by the parties involved in the state proceedings.

32. The above numerous and various rights will, in fact, be consistently violated if these proceedings were ever to be remanded back to said state court, and manifest injury would accrue upon not only this Petitioner, but also against the obvious best interests of his minor child.

## NOTICE TO PARTIES

33. Petitioner now and hereby provides his formal Notice of the above to all interested parties, of record or otherwise, within and surrounding the above-encaptioned state court proceedings.

## SUMMARY AND PRAYER

34. Petitioner reiterates that his request for removal to this Court is not just about a supported and reasonable *expectation* of the future manifest deprivation of his various civil rights within said state court, but also that such a deliberately unlawful pattern of the same is well established.

35. Without the immediate intervention, and the exercise of full jurisdiction and authority by this Honorable Court in removing said lower state proceedings, the Petitioner will be otherwise subjected to egregious denial and inability to enforce in said state court one or more rights under the laws providing for the equal rights of citizens of the United States, and will be likewise unlawfully forced to suffer manifest and irreparable injuries therein, without reasonable remedy.

WHEREFORE, the undersigned Petitioner, Howard Leventhal, now prays for removal of the above-encaptioned state court proceedings into, and under, the jurisdiction of this United States District Court, with all speed, and for all other relief deemed just and proper in the premises.

Respectfully submitted,

Howard Leventhal

## VERIFICATION

I hereby declare, verify, certify and state, pursuant to the penalties of perjury under the laws

of the United States, and by the provisions of 28 USC § 1746, that all of the above and foregoing

representations are true and correct to the best of my knowledge, information, and belief.

Executed at _____Elk Grove, Village, IL_____, this 14th day of March, 2008.

_____
Howard Leventhal

SUBSCRIBED AND SWORN TO
Before me this 14 day of March 2008.

_____
NOTARY PUBLIC

```
OFFICIAL SEAL
KENDRA THROWER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/01/09
```

## CERTIFICATE OF SERVICE

I hereby certify that, on this 17th day of March, 2008, a true and complete copy of the foregoing petition for removal, has been duly served upon all parties of record in the lower state proceedings, to-wit:

Mary Handeland, Petitioner (Respondent in this Federal matter):
By hand delivery personal service at the Lake County Courthouse on March 17, 2008

David S. Kerpel, Attorney for Handeland:
By hand delivery personal service at the Lake County Courthouse on March 17, 2008

The Honorable Joseph Waldeck, Judge assigned to Lake County Case No. 08 OP 334:
By hand delivery personal service at the Lake County Courthouse on March 17, 2008

The Honorable George Strickland, Judge assigned to Lake County Case No. 05 D 808:
By hand delivery to the judge's chambers at the Lake County Courthouse on March 17, 2008

Deborah A. Gust, Collateral Party: By United States first class mail to:
4343 Old Grand Ave, Suite 107C; Gurnee IL 60031

Lorraine Marx, Collateral Party: By United States first class mail to:
N17W51 Garfield Ci, Cedarburg, WI 53012

Christine Klotz, Collateral Party: By United States first class mail to:
1823 FAIRHAVEN DR , CEDARBURG, WI 53012

Michael Budiac, Collateral Party: By United States first class mail to:
3072750 FIELDWOOD DR, PEWAUKEE, WI 53072

Stephen Budiac, Collateral Party: By United States first class mail to:
4429 N 50th St., Milwaukee, WI 53218-5704

and, that the same is being also filed this same date with the Lake County Illinois Circuit Court Clerk in the lower state trial court proceedings.

Howard Leventhal

Howard Leventhal
Pro Se
335 Richert Rd
Wood Dale, IL 60191
Ph 847-804-4008
Fx 312-896-9235
Email: hleventhal@hotmail.com

**Howard Leventhal**
335 Richert Rd., Wood Dale, IL 60191
ph 847-804-4008 | Fx 312-896-9235 | Email: hleventhal@hotmail.com

March 17, 2008

The Honorable Judge Joseph Waldeck
The Honorable Judge George Strickland
Circuit Court of the 19th Judicial Circuit
Lake County, Illinois
18 N. County St
Waukegan, IL 60085           IN RE: *The Marriage of Handeland & Leventhal*
                             Case Nos.: **05 D 808** and **08 OP 334**
                             **TRANSMITTAL OF NOTICE OF
                             REMOVAL TO THE UNITED
                             STATES COURT**

Gentlemen:

Regrettably these matters are now removed to the jurisdiction of the United States Court for the Northern District of Illinois, for reasons including but not limited to the following:

1.     For violating my federally guaranteed rights under the First, Fifth and Fourteenth Amendments; and

2.     For bringing criminal charges against me and surrounding me with armed, flak-jacketed, Tazer-carrying Sheriff's deputies for *absolutely no reason* other than *I wrote a street address in a draft legal pleading*; all of which have attempted to and acted to stifle my First Amendment right to petition the government; and

3.     For outrageous and utterly unjustified denial of my Fifth Amendment right to due process by conducting a hearing and ordering an Emergency Order of Protection and associated penalties against me, including unlawful diminution of my lawful parental rights – without notice – but while I was present in the Lake County Courthouse before Judge Strickland and fully available for receipt of notice in the presence of Handeland, her parasite, conflict-seeking attorney and many armed Sheriff's deputies; and

4.     For organized and systematic unconstitutional acts to unlawfully disrupt, diminish, erode, corrode, and corrupt my cherished relationship with my daughter, for whom I would die a thousand painful deaths without any hesitation whatsoever, without any rightful cause or justification whatsoever; and

5.     For other good and just causes rising to the level of federal questions.

**This Court may rest fully and completely reassured of the following:**

A.     I have never nor would I ever commit any act of physical violence against any person except in the face of imminent threat of serious physical harm to myself, my loved ones or defenseless others.

B.     As certain of the attached copies of sworn affidavits and testimonials attest, I have held the rank of Internationally Certified Black Belt Instructor in Tae Kwon Do for 33 years

Also: **EXHIBIT 1**
To Notice of Petition and Verified Petition
to Warrant of Removal

and have taught violence *avoidance* to hundreds of children and adults. Committing any act of physical violence motivated by anger or any motivation other than defense of self or defenseless others would be antithetical to my very existence, to my purpose for living as it is known by the affiants and all who know me including and most assuredly the Petitioner herself. The mere suggestion by the Petitioner that I would act counter to my lifelong history and sworn, personal commitments to non-violence, the avoidance of violence and to the protection of defenseless others, particularly in the absence of any competent evidence to the contrary, should go far to explain my verbal outbursts and textual expressions of anger at the Petitioner, her ulterior motives and her unethical, parasite, conflict-seeking attorney.

C.     Although this matter is now out of the jurisdiction of this Court, to give comfort to this Court and to provide for the safety and welfare of my daughter among other reasons, I hereby do solemnly swear, pledge and affirm as follows:

     a.     That I will continue abiding by the terms of the order for temporary maintenance and child support in place hereunder within reasonable limits; and

     b.     That I will continue abiding by the terms of the Joint Parenting Agreement hereunder; and

     c.     That in my capacity as an officer of the corporation which owns the automobile driven by Petitioner, I will continue for the time being allowing the Petitioner to use the automobile presently in her possession, unless she abuses this generous privilege or makes another attempt to convert it to her own property; and

     d.     That I will in no way violate the spirit or intent of Emergency Orders of Protection generally (although I do not admit in any manner or fashion whatsoever to a single one of the allegations, suggestions or insinuations of misconduct implied within the Emergency Order of Protection hereunder); and

     e.     That I expect the Petitioner to conduct herself likewise in return, and that her attorney will act promptly, immediately and fairly to mediate and resolve any minor conflicts between the parties in the interim until further binding orders of this Court or another court of competent jurisdiction are issued in this matter.

**NOTICE OF CONTINUING RIGHTS UNDER ILCS 720 5/10–5.5.** Lastly, if there is any interference with my rights as granted in the Joint Parenting Agreement as agreed by the Petitioner and entered with this Court, including but not limited to the provisions for vacation periods, I will expect and make every effort to ensure that a law enforcement officer of the State of Illinois will support my rights to intervention under Illinois CS 720 5/10–5.5.

Respectfully transmitted by the Respondent,

Howard E. Leventhal

Also: **EXHIBIT 1**
To Notice of Petition and Verified Petition
to Warrant of Removal

## CERTIFICATION

HOWARD LEVENTHAL, being first duly sworn on oath, deposes and states that he is the respondent in the above-captioned matter, that he has read the foregoing document, and the statements made herein are true, correct and complete to the best of his knowledge and belief.

_____
HOWARD LEVENTHAL

SUBSCRIBED AND SWORN TO
Before me this 14 day of March 2008.

_____
NOTARY PUBLIC

OFFICIAL SEAL
KENDRA THROWER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/01/09

Also: **EXHIBIT 1**
To Notice of Petition and Verified Petition
to Warrant of Removal

## SWORN AFFIDAVIT OF DR. GREGGORY A. YOUSTRA

I, Greggory A. Youstra do hereby solemnly swear and affirm as follows: I am a father, grandfather, 65 years of age and a resident of Cook County for more than thirty eight years. I was a public school teacher for 38 years and hold a doctorate in education. I am a 8th degree black belt master instructor in TaeKwon-Do and have taught self defense and violence avoidance to thousands of children.

My family and I have known Howard E. Leventhal for more than thirty years. Howard was a student of mine at Niles Township North High School in Skokie, Illinois and one of my earliest students to achieve black belt rank. My first independent teaching assignment for Howard was to instruct the early childhood class in Morton Grove's Park District.

Howard has always been a person who can be trusted to do what he says he'll do. I am very impressed by the way he has continued to support his ex-wife who is stricken with multiple sclerosis. His compassion in this case is noteworthy.

Howard and his wife went to China to adopt a beautiful baby girl named Amelia Wenying Handeland-Leventhal. Howard has shown much love and financial support for this child. He is a capable and committed father.

Howard is hard working and has always provided for those in his family. He helps support his mother and father who are elderly.

I have never heard or witnessed Howard intoxicated on alcohol or drugs. He has not taken illegal drugs, associated with criminals, or had any disputes with associates, neighbors, or law enforcement personnel.

In my opinion, Howard is an exemplary human being in every aspect of is life.

AFFIANT FURTHER SAYETH NOT.


_Greggory G. Youstra_          Date: _12-07-2005_


Subscribed and sworn before me this _7th_ day of _December_, 2005.

_Mary L. Zinnel_
[Notary Public]

OFFICIAL SEAL
MARY L ZINNEL
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES. 12-19-08

EXHIBIT 1



**Spectrum**
BUSINESS RESOURCES LLC

November 30, 2005

To Whom It May Concern:

My name is Dan Bleil. I am currently president of a credit union service organization providing financial services to businesses and professionals throughout the country, a proud father of two adult women, and a dear friend of Howard Leventhal. I have known Howard Leventhal both professionally and personally for more than 15 years. I have known Howard to be a caring and responsible man. He has demonstrated great patience and care with both his elderly parents and his ex-wife Judith, a disabled sufferer of multiple sclerosis. I also witnessed Howard's actions, attitudes and commitment throughout the arduous and burdensome process of adopting his daughter, Amelia Wenying Handeland-Leventhal. During this process, I observed Howard's loving and caring attempt to manage the process with the utmost care and attention to both his wife and their prospective adopted child. The process required an exceptional amount of time and resources in a foreign country in order to conform to the requirements of the child's country of origin. I was impressed with the way in which Howard handled this process with care and attention to the special and sensitive conditions of Amelia's origins.

Since the successful adoption of Amelia, many of our shared conversations revolve around his love and affection for his daughter. I have had the opportunity to spend many shared moments with Howard and Amelia as they play and interact with one another. It is obvious to anyone that knows Howard even casually, that his relationship with his daughter is the most important thing in his life. Furthermore, and more critical, Amelia's need for her father's love, care, and nurturing is indisputable.

I am compelled to assist Howard in his efforts to be afforded as much time as possible with his daughter as a result of my own experience with the judicial system in Illinois and its adverse impact on father's and their children. Too often the child's needs are deferred to the mother with little regard or attention to the relationship the child had, and needs to maintain, with their father. I would elaborate, but am confident that the plethora of written material supporting this most intuitively obvious situation requires little more supporting evidence than the look in the eyes of the father's child.

Howard is a hard working, creative individual with an unparalleled work ethic. In my opinion as father of two beautiful adult women, Amelia will be best served by a custody arrangement whereby Howard is afforded the greatest conceivable amount of time exclusively with Howard. Please feel free to contact me if I can provide any further support in my efforts to provide whatever is necessary to assist Howard and Amelia in maintaining the relationship they both need.

Most sincerely,

Daniel S. Bleil

EXHIBIT 1

State of Illinois   }
                    }ss,
County of Cook      }

## AFFIDAVIT

I, HENRY E. SZACHOWICZ, having been first duly sworn and under oath state as follows:

1.) That I am an adult, under no disability, and reside at 1812 Admiral Court, Glenview, Illinois 60026, and a licensed attorney in the state of Illinois, and I am making this affidavit as to the character and fitness of Howard E. Leventhal, as a father and parent, deserving of custody and Joint Parenting rights.

2.) That I am a 6th degree black belt instructor in TaeKwon-Do and have taught self defense, violence avoidance, Judo and Jiu Jitsu to more than 1,000 children, and that Howard Leventhal was one of my earliest instructors.

3.) That I have personally known Howard E. Leventhal (hereinafter referred to as "Howard") for more than thirty (30) years, both on a professional basis as his attorney and socially, as a friend.

4.) That I have personally observed Howard in his dealings with his elderly parents and ex-spouse, and have first hand knowledge of the care he has lavished on both; including his continuing commitment to his ex-spouse's welfare, who is suffering from a chronic illness.

5.) That, as a personal friend I have observed and counseled Howard through the lengthy and complex adoption proceedings involving his daughter, Amelia Wenying Handeland-Leventhal, and have been impressed by his determination and steadfastness.

6.) That I have been a guest in Howard's home and have on numerous occasions, outside the home, observed Howard and his relationship with his daughter, Amelia. At all times he conducted himself as a loving, caring and nurturing parent.

7.) That to the best of my knowledge and belief, Howard has an outstanding reputation in his community, as a hard working, upstanding family man and a good provider and loving father.

8). That to the best of my knowledge and belief, Howard has no criminal record, substance abuse problems, or history of anti-social behavior. In my opinion, Howard is a fit and proper parent.

1



9.)    That it is my further opinion, that Howard's and Amelia's best interests would both be served by maximizing Howard's visitation, Joint Parenting and custody rights.

FURTHER AFFIANT SAYETH NOT.

November 29, 2005.

_Henry E. Szachowicz_
Henry E. Szachowicz

Subscribed to and sworn to before me this 29th day of November, 2005.


"OFFICIAL SEAL"
SHARON DEEMAR SZACHOWICZ
STATE OF ILLINOIS
COMMISSION EXPIRES 11/16/09

_Sharon Deemar Szachowicz_
Notary Public

EXHIBIT 1

## SWORN AFFIDAVIT OF CAROL GRABSCHEID

I, Carol Grabscheid do hereby solemnly swear and affirm as follows: I am a mother and grandmother, _66_ years of age and a resident of Lake County for more than _30_ years. I have had principal roles in the raising of _4_ children.

My family and I have personally known Howard E. Leventhal for more than 24 years. During this period I have witnessed Howard care for his elderly parents and his ex-wife Judith, a totally disabled sufferer of chronic-progressive multiple sclerosis, along with others, in an utterly unselfish manner without regard to the burden upon himself. I also personally witnessed Howard's actions, attitudes and commitment throughout the arduous and burdensome process of adopting his daughter, Amelia Wenying Handeland-Leventhal, throughout the entire painstaking process.

From my personal knowledge, observance of video recordings, textual records and the witnessed statements of directly-involved individuals, Amelia was adopted as an abandoned orphan from a stark, state run orphanage in a rural area of the People's Republic of China. She was abandoned in a lavatory at a train station. From the first day of Howard's entry into the two year long adoption process, I have observed him act in the most committed and loving possible manner toward the process and end result, always with the utmost deference to the special and sensitive conditions of Amelia's origins.

From the first day of Howard's parenthood in March 2002 to the present time, I have also personally witnessed and been otherwise exposed to Howard's performance as a parent. His unconditional love for his daughter and 110% commitment to nurturing, educating and raising her in the most exemplary possible fashion is abundantly clear to me. In my opinion as an experienced child caregiver, it is difficult or impossible to envision a more committed and capable father.

Howard is a hard working, creative individual with an unparalleled work ethic. To my personal knowledge over more than two decades, he has never been arrested, taken an illegal drug, suffered from a substance abuse affliction or associated with criminals or otherwise unsavory characters. Further in my opinion as an experienced child caregiver, Amelia will be best served by a custody arrangement whereby Howard is afforded the greatest conceivable amount of time exclusively with Howard.

AFFIANT FURTHER SAYETH NOT.

_Carol Grabscheid_    Date: _November 30, 2005_

Subscribed and sworn before me this _30_ day of 2005. [Notary Public]

OFFICIAL SEAL
MAYRA A. FLORES
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires May 16, 2009

EXHIBIT 1

11/30/05

## SWORN AFFIDAVIT OF LINDA SINGER

I, Linda Singer, do hereby solemnly swear and affirm as follows: I am a mother, 47 years of age and a resident of Cook County for 47 years. I have had principal roles in the raising of 2 children.

My family and I have personally known Howard E. Leventhal for more than 20 years. During this period I have witnessed Howard care for his ex-wife Judith, a totally disabled sufferer of chronic-progressive multiple sclerosis, along with others, in an utterly unselfish manner without regard to the burden upon himself. I am also aware that he is very close with a wheelchair bound disabled cousin and always available to help him.

Howard is very caring and will give 200% of himself to those who are special to him including his daughter, family and friends. Howard is the type of friend who is always available to help no matter how busy he is in his private and business life. Howard is an individual you can rely on. It will only profit Amelia to spend as much time as possible with her Dad. He possesses unconditional love for her and she is a huge part of his life.

Howard is a hard working, creative individual with an unparalleled work ethic. To my personal knowledge over more than two decades, he has never been arrested, taken an illegal drug, suffered from a substance abuse affliction or associated with criminals or otherwise unsavory characters.

AFFIANT FURTHER SAYETH NOT.

_Linda C. Singer_____ Date: _Nov 21, 2005_

Subscribed and sworn before me this 21st day of 2005. [Notary Public]



State of Illinois } }ss, County of Cook }

## SWORN AFFIDAVIT OF MICHAEL GIANOKOPOLOUS

I, MICHAEL GIANOKOPOLOUS, having been first duly sworn and under oath state as follows:

1.) That I am an adult, under no disability, and reside at 35672 N-SHERIDAN DR. FOX LAKE IL 60020, and I am making this affidavit as to the character and fitness of Howard E. Leventhal, as a father and parent, well deserving of custody and Joint Parenting rights. I have personally known Howard E. Leventhal (hereinafter referred to as "Howard") for approximately ten (10) years, both on a professional basis as an investor in his company and socially, as a friend.

2.) That I speak with Howard at least once per week on the telephone; and during those conversations as have taken place in the 3 years since Howard's adoption of his daughter Amelia, by far the most predominant and common theme is Howard's expression of his love, affection, care and concern for the health, development, welfare and education of Amelia.

3) That I have learned of Howard's dealings with his elderly parents and disabled ex-wife Judith, and have knowledge of his continuing commitment of time, effort and money to these individuals. I have been a guest in Howard's home and have on numerous occasions, outside the home, observed Howard and his relationship with his daughter, Amelia. At all times he conducted himself as a loving, caring and nurturing parent.

4.) That to the best of my knowledge and belief, Howard has an outstanding reputation in his community, as a hard working, upstanding family man and a good provider and loving father.

5). That to the best of my knowledge and belief, Howard has no criminal record, substance abuse problems, or history of anti-social behavior. It is my further opinion, that Howard's and Amelia's best interests would both be served by maximizing Howard's visitation, Joint Parenting and custody rights.

FURTHER AFFIANT SAYETH NOT.          11/30/          , 2005.

Michael Gianokopolous

Subscribed to and sworn to before me this 30 day of November, 2005.

_____ Notary Public

"OFFICIAL SEAL"
Andrew Meyers
Notary Public, State of Illinois
McHenry County
My Commission Expires Sept. 21, 2009

1

